1  **WO**                                                                           SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Sam Parisi, | No. CV 09-1165-PHX-MHM (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, | |
| Defendant. | |

Plaintiff Joseph Sam Parisi filed this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio. (Doc. #1.) Defendant moves to dismiss on the ground that Plaintiff failed to exhaust his administrative remedies. (Doc. #7.) The motion is ready.[1] (Doc. ##9, 10.)

The Court will grant the motion in part and deny it in part.

## I. Background

Plaintiff alleged in Count I of his Complaint that Defendant sets policy and deliberately instructs his staff to feed inmates only two meals per day. Plaintiff contended that the meals are stale, spoiled, and lack necessary nutrition and calories. In Count II, he asserted that Defendant deliberately sets policy and directs his staff to overcrowd the holding cells in the Fourth Avenue and Madison Avenue Jails and that the conditions are unsanitary.

---

[1] The Court sent the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. #8.)

(Doc. #1.) The Court directed Defendant to answer Counts I and II and dismissed the remaining Count. (Doc. #4.)

## II. Motion to Dismiss

### A. Legal Standard

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B. Parties' Contentions

#### 1. Defendant

In support of his motion, Defendant submits the affidavit of Susan Fisher, an External Grievance Coordinator with the Maricopa County Sheriff's Office (MCSO). (Doc. #7, Fisher Aff. ¶ 1.) Fisher attests that her duties include receipt, processing, tracking, and storage of inmate grievances. (Id. ¶ 2.) To initiate the informal grievance process, the inmate submits a grievance form. If the detention officer cannot resolve the issue, the officer forwards the grievance to the shift supervisor. If the shift supervisor cannot resolve the matter, the grievance is forwarded to the hearing officer. (Id. ¶ 7.) If the inmate is not satisfied with the outcome of the informal grievance process, he can file a formal grievance

by filing the Institutional Grievance Appeal with the Jail Commander. If he is not satisfied with the Jail Commander's decision, the inmate may file an External Grievance Appeal, which is forwarded to the External Referee. That person's decision concludes the MCSO Grievance process and exhausts the inmate's administrative remedies. (Id.; Ex. B, MCSO Inmate Grievance Procedure Policy DJ-3.) Defendant also submits excerpts from the MCSO Rules and Regulations for Inmates. (Id., Ex. A.)

Fisher attests that Plaintiff filed no grievances regarding overcrowding and unsanitary intake/booking or holding cells or regarding portions or quantities of food. (Id. ¶ 10.) She further attests that both of these matters are grievable issues. (Id. ¶ 11.)

### 2. **Plaintiff**

In opposition, Plaintiff submits Grievance Forms, dated May 17, 2009, grieving the meal policy and the overcrowding policy (Doc. #9, Exs. A, B); and the statements of inmates Sullivan, dated May 19 (id., Ex. C), Hillyer, dated May 19 (id. Exs D), Hillyer, dated Aug. 8 (id., Ex. E), Horstman, dated Aug. 8 (id., Ex. F), and Hillyer, dated Aug. 8 (id., Ex. G).

Plaintiff asserts that his evidence shows that MCSO purposely denies inmates access to the grievance process. (Doc. #9 at 2-3.) With respect to the two grievances that he attaches to his opposition, Sullivan and Hillyer state that each witnessed Plaintiff present grievances on May 17 to the sergeant on duty, who, after hearing Plaintiff describe the grievances, said that the issues were non-grievable and refused to accept the grievances. (Exs. C, D.) Hillyer also states that he and Horstman were present when Plaintiff stopped Officer Negbee on August 8 at about 6:30 p.m. regarding filing grievances on food necessities and overcrowding in holding cells and that Negbee said the issues were non-grievable. (Ex. A, see Ex. F.) Hillyer also states that he was present on August 8 at 10:30 a.m. and that Officer Volenti told Plaintiff that these issues were not grievable. (Ex. G.) Plaintiff argues that he was denied access to the grievance process. (Doc. #9 at 4-5.)

### 3. **Reply**

Defendant argues that there is no evidence that Plaintiff was not allowed to grieve these issues other than his statements that some unidentified on-duty sergeant claimed that

- 3 -

Plaintiff could not grieve these issues; Defendant asserts that Plaintiff did not attempt to identify the on-duty sergeant either by name or with a physical description (e.g. hair color, height, weight, etc.) or even whether that person is a male or female. (Doc. #10 at 2.) Defendant further argues that there is nothing in the grievances attached to his response that show that the Plaintiff actually submitted the grievances to anyone and/or that they were rejected because the issues set forth in the grievances are not grievable. (Id.) Defendant argues that the credible evidence—Fisher's affidavit—shows that Plaintiff, like all inmates, had access to the grievance system for issues related to an inmate's conditions of confinement. (Id. at 2-3.)

Defendant also argues that these two grievances would have been untimely. (Id. at 3.) Defendant asserts that Exhibit A does not state the exact incident Plaintiff is grieving or the date it occurred. In Exhibit B, Plaintiff claims that he was subjected to overcrowding when he was arrested in August 2008 and then again when he was arrested on or about April 24, 2009; but Exhibit B is dated May 17, 2009, so Plaintiff was allegedly grieving issues that were almost ten months old and approximately 20 days old, respectively. Defendant argues that under MCSO policy, an inmate is to submit a grievance on the issue he or she is grieving within 48 hours of the event being grieved. (Id., Doc. #7 ¶ 7(a).) According to Defendant, the grievances attached by Plaintiff, even if they were submitted, would not have been within the 48-hour deadline set forth in MCSO policy.

Defendant further argues that Plaintiff's attempt to access the grievance system almost three months after he filed his civil rights complaint does not satisfy the requirements of the PLRA, which requires exhaustion before filing suit. (Id. at 4.) Defendant also disputes Hillyer and Hosrtman's version of events regarding Officer Negbee; Negbee asserts that during a conversation he had with Plaintiff, Plaintiff asked Negbee what would happen if Plaintiff decided to grieve issues regarding overcrowding and food necessities. (Id. at 5, Negbee Decl. ¶ 5.) Negbee attests that he discussed the issues with Plaintiff and that he sometimes explains to inmates that an issue is unlikely to be resolved in his favor, such as the two-meals-a-day policy. (Negbee Decl. ¶¶ 5, 7.) Negbee further asserts that when he

asked Plaintiff if he would like grievance forms, Plaintiff declined. (Id. ¶ 5.)

**C.     Analysis**

The Court will grant the motion as to the claim for overcrowding and deny it as to the claim for meals.

Defendant provides evidence of the existence of a grievance procedure and that Plaintiff failed to exhaust his remedies under it. Plaintiff responds with evidence that he was advised that the particular matters were not grievable. As to the claim for overcrowding in the holding cells, Plaintiff's own evidence shows that his grievance attempts were untimely under the MCSO grievance policy. Filing a untimely grievance is not proper exhaustion. See Woodford, 548 U.S. at 92.

As to the grievance about the amount and quality of the food, both inmate statements regarding Plaintiff's May 17 attempt to file a grievance are labeled "Unsworn Declaration," but Plaintiff refers to them as sworn, and the pre-printed language states "I declare . . . under penalty of perjury that the foregoing is true and correct." (Doc. #9 at 3, Exs. C-G.) The Court finds Plaintiff's evidence somewhat contrived—the inmate statements purport to have been made within two days of the attempt to file the grievances rather than at the time of opposition to the motion to dismiss. Nevertheless, the burden to establish failure to exhaust is on Defendant, and Defendant does not claim that Sullivan and Hillyer were not jailed with Plaintiff during the relevant time period, and Defendant provides no evidence that other inmates filed grievances on this issue. Furthermore, the Court finds that no specific date would be required if Plaintiff is complaining about a policy that would affect him on a daily basis; therefore, the Court rejects Defendant's argument that the grievance was outside the time frame.

The Court will grant Defendant's motion in part and dismiss without prejudice the claim of overcrowding in the holding cells. The Court will deny the motion as to the claims in Count I.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendant's Motion

1 to Dismiss (Doc. #7).

2     (2)   Defendant's Motion to Dismiss (Doc. #7) is **granted as to the claims in Count II and denied in all other respects.**

4     (3)   The claims in Count II are dismissed without prejudice.

5     (4)   The remaining claims are those in Count I.

DATED this 17th day of November, 2009.

_____
Mary H. Murguia
United States District Judge