**WO**  **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Sam Parisi, | No. CV 09-1165-PHX-MHM (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, | |
| Defendant. | |

Plaintiff Joseph Sam Parisi brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio (Doc. 1). Before the Court is Defendant's Motion for Summary Judgment (Doc. 29). The motion is fully briefed (Docs. 38, 40).

The Court will grant the motion and terminate the action.

**I.   Complaint**

Plaintiff's claim arose during his confinement at various Maricopa County Jails in Phoenix, Arizona (Doc. 1 at 1). In his Complaint, Plaintiff alleged that his constitutional rights were violated by Defendant's policies governing food service (id. at 1). Plaintiff claimed that he was provided just two small, spoiled, and nutritionally inadequate meals a day (id. at 3 (Count I)).[1] Plaintiff further alleged that Defendant instructs his staff to seize inmates' stored food to ensure inmates experience hunger pains (id.). Plaintiff sued for

---

[1] Upon screening, the Court dismissed Count III for failure to state a claim (Doc. 4). Subsequently, Count II was dismissed for failure to exhaust administrative remedies (Doc. (Doc. 13).

monetary damages (id. at 6).

## II. Defendant's Motion for Summary Judgment

### A. Defendant's Contentions

Defendant moves for summary judgment on the grounds that Plaintiff fails to demonstrate a constitutional deprivation and that the policy governing food was unconstitutional (Doc. 29). In support, Defendant submits his separate Statement of Facts (DSOF) (Doc. 30). Defendant also proffers the declaration of Lieutenant Kimberly Thompson, an officer in the Institutional Services division of Maricopa County Sheriff's Office (MCSO), which includes Food Services (id., Ex. A, Thompson Decl. ¶ 1), with attachments: Plaintiff's Inmate Housing Report (id., Ex. A, Attach. A); a copy of the MCSO pickup roster for April 24, 2009 (id., Attach. B); a copy of the MCSO Policy DG-1, entitled "Menu Planning and Nutritional Adequacy for Inmates" (id., Attach. C); a copy of the MCSO Policy DG-2, entitled "Inmate Meal Distribution" (id., Attach. D); a copy of the 2005 United States Department of Agriculture (USDA) Guidelines for Americans (id., Attach. E); copies of menus and nutritional information for meals served to inmates (id., Attachs. F-G); a copy of the MCSO Policy DG-3, entitled "Food Services Section Safety and Sanitation" (id., Attach. H); a copy of the MCSO Policy DG-6, entitled "Budgeting, Purchasing, and Storing of Food" (id.); and copies of Plaintiff's medical records (id.).

In his motion, Defendant argues that any policy claim against Defendant fails because the MCSO's food policy requires that meals meet or exceed the daily calories required for a sedentary adult (Doc. 29 at 5-6). In addition, the policy requires that the jail's dietician periodically review the menus and the meals actually served to ensure that the nutritional needs of inmates were met (id. at 6). As a result, Defendant contends that he has introduced indisputable evidence that the meals served during Plaintiff's incarceration met the USDA guidelines and that Plaintiff has filed to provide any evidence that any food he received was spoiled.

Alternatively, Defendant maintains that there is no evidence that Defendant knew of any risk to Plaintiff or that Plaintiff actually suffered any harm (id. at 7-8). Finally,

1   Defendant argues that Plaintiff is not entitled to punitive damages (id. at 9).

   **B.   Plaintiff's Response**[2]

Plaintiff opposes Defendant's motion and maintains that there are sufficient facts showing a genuine issue for trial (Doc. 38). Plaintiff submits his own Statement of Facts (Doc. 39, Pl.'s Statement of Facts (PSOF)); his declaration (id., Ex. A, Pl. Decl.); and the declarations of inmates Roy Lee Jarrett, Chad Edward Lander, and Richard A. Breitling (id., Exs. B-D).

Plaintiff argues that it is well-known that Defendant is "America's Toughest Sheriff" and that Defendant has intentionally created policies—written and unwritten—that are deliberately indifferent to the health of Plaintiff and other inmates (Doc. 38 at 4-5). Plaintiff contends that contrary to Defendant's contentions, Plaintiff consistently received food that was moldy, undercooked, or otherwise inedible (Doc. 39, Ex. A, Pl. Decl. ¶ 3). Plaintiff asserts that it was common to receive food with foreign objects and that MCSO staff would not replace inedible food (id. ¶¶ 6-7). Plaintiff claims that food that is inedible cannot count toward the USDA minimum calorie requirement (Doc. 38 at 5). Plaintiff also challenges the meal reports Defendant submitted in support of his summary judgment motion. Plaintiff argues that any report generated by any MCSO employee is suspect and should not be considered (id.).

As a result of inadequate and spoiled meals, Plaintiff alleges he suffered vomiting, severe abdominal pain, cramping, headaches, dizziness, and physical weakness (Pl. Decl. ¶ 9). Plaintiff also claims he was placed on a vegetarian diet (id. ¶ 10). Finally, Plaintiff alleges that on days he went to court, he was served meals more than 14 hours apart (id. ¶ 4).

   **C.   Defendant's Reply**

In reply, Defendant maintains that MCSO policies pertaining to food service are constitutional and that Plaintiff has not introduced any evidence to the contrary (Doc. 40 at 2). Additionally, Defendant argues that Plaintiff has not introduced any evidence to show

---

[2] The Court issued an Order informing Plaintiff of his obligation to respond to Defendant's motion (Doc. 53). See Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

1 that Defendant was aware of any deficiencies with respect to meals and failed to act. 2 Defendant also challenges the statements from three other MCSO inmates, arguing that the 3 inmates' contentions are irrelevant with respect to whether MCSO's food policies are 4 unconstitutional. And finally, Defendant reiterates that there is no evidence Plaintiff suffered 5 anything more than *de minimis* harm or that Defendant had an intent to punish inmates (id. 6 at 5-6).

## IV.    Legal Standards

### A.    Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477

U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

### B. Fourteenth Amendment[3]

Pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause, which provides that "detainees have a right against jail conditions or restrictions that 'amount to punishment.'" Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)). The Fourteenth Amendment standard is more protective than the Eighth Amendment; "[t]his standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." Pierce, 526 F.3d at 1205.

Under the Fourteenth Amendment analysis, to determine if government action constitutes punishment, courts must determine (1) whether the action caused the detainee to suffer some harm or "disability," and (2) whether the purpose of the action was to punish the detainee. Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing Bell, 441 U.S. at 538). The test for identifying unconstitutional punishment of pretrial detainees is whether there was an express intent to punish or whether there was an alternative purpose for the restriction and whether the restriction appears excessive in relation to this alternative purpose. Demery, 378 F.3d at 1028.

Not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. Bell, 441 U.S. at 537. To constitute punishment, the harm caused by

---

[3] Defendant disputes that Plaintiff was a pretrial detainee during his MCSO incarceration, arguing that Plaintiff was transferred to the Lower Buckeye Jail from the Arizona Department of Corrections. Plaintiff, however, maintains that he was transferred from the Pinal County Jail to MCSO custody. Defendant's evidence about Plaintiff's transfer to MCSO custody reflects only that Plaintiff was picked up from "S. O. Florence" on April 24, 2009 (Doc. 30, Ex. A, Attach. B). This evidence does not establish that Plaintiff was transferred from the Arizona Department of Corrections. And Defendant fails to introduce any other evidence that Plaintiff was a convicted prisoner during his MCSO incarceration. Consequently, the Court will analyze Plaintiff's claim as arising under the Fourteenth Amendment. Pierce, 526 F.3d at 1205.

1 the action or condition "must either significantly exceed, or be independent of, the inherent 2 discomforts of confinement." Demery, 378 F.3d at 1030. A court should look at the nature 3 of the condition and whether it is reasonably related to a legitimate governmental objective. 4 Pierce, 526 F.3d at 1205. If the condition or restriction is arbitrary or purposeless, a court 5 may infer that the purpose of the action is punishment that may not be inflicted on pretrial 6 detainees. Id. (citing Bell, 441 U.S. at 539).

### C. Food

Food served to inmates does not have to be tasty or aesthetically pleasing, and if meals occasionally contain foreign objects or are served cold, it does not amount to a constitutional deprivation. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). But inmates must be provided food that is nutritionally adequate to maintain health and that is prepared and served in a manner that does not present a danger to their well being. Id.; see also Johnson v. Lewis, 217 F.3d 726, 731-32 (9th Cir. 2000) (identifying a cognizable constitutional violation where inmates alleged they were, *inter alia*, deprived of adequate food).

## V. Analysis

A supervisory official may be liable if he implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is the 'moving force of the constitutional violation.'" Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citation omitted). To premise a supervisor's alleged liability on a custom or policy, the plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Under state law, Defendant has final policy-making authority with respect to the operation of the county jails. See Ariz. Rev. Stat. § 11-441(A)(5); Flanders v. Maricopa County, 54 P.3d 837, 847 (Ariz. Ct. App. 2002). Further, it has been established that pretrial detainees at the Maricopa County Jails must be provided food that meets or exceeds the USDA Dietary Guidelines. Graves v. Arpaio, 2008 WL 4699770, at *46 (D. Ariz. Oct. 22, 2008); Graves, ___ F.3d ___, 2010 WL 3987721, at *5-6 (9th Cir. Oct. 13, 2010)

1  (addressing, among other issues, adequacy of food); see <u>U.S. ex rel. Robinson Rancheria
2  Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 2002) (courts may take judicial
3  notice of proceedings in other courts "if those proceedings have a direct relation to matters
4  at issue").

5      Defendant introduces the relevant food policies in effect during Plaintiff's
6  incarceration, which establish that inmates were served two meals a day, with an average of
7  just over 2500 calories per day (Doc. 30, Ex. 1, Thompson Aff. ¶¶ 12-13). Defendant further
8  submits the USDA guidelines for recommended caloric intake for sedentary males between
9  the ages of 31 and 50, which is 2200 calories per day (<u>id.</u> ¶ 10).[4] Additionally, Defendant
10 avers that although there might be fluctuation in the actual calories served on a day-to-day
11 basis, the jail's policy is to serve a minimum of 2400 calories per day (<u>id.</u> ¶ 16).

12     The Court finds that Defendant has introduced specific evidence that his policy
13 required inmates to be served a minimum of 2400 calories per day, which exceeds the USDA
14 caloric guidelines for sedentary males. The burden now shifts to Plaintiff to present specific
15 facts that a genuine issue exists. Fed. R. Civ. P. 56(e).

16     Plaintiff alleges that in practice, it was the custom at the jail to serve meals more than
17 14 hours apart and provide meals with inadequate calories and spoiled food. Plaintiff also
18 alleges that he suffered vomiting, headaches, and dizziness as a result of the spoiled and
19 insufficient meals provided at the jail. But Plaintiff's response is devoid of any specific
20 allegations regarding any spoiled or inedible meals he received. Even crediting Plaintiff's
21 claim that he did sometimes receive spoiled food, a claim that a policy or custom is
22 unconstitutional "may not be predicated on isolated or sporadic incidents." <u>Trevino v. Gates</u>,
23 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff's conclusory and vague allegations are simply
24 insufficient to defeat summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir.
25 1989).

26     Nor does Plaintiff introduce any probative evidence that Defendant directed or was
27
28
---
[4] Plaintiff's date of birth is November 14, 1965 (Doc. 30, Ex. 1, Attach. A).

- 7 -

aware of any deviations from his established meal policies. See Redman, 942 F.2d at 1447 (culpability where a supervisor "knows or reasonably should know" that acts by others would lead to a constitutional injury) (citation omitted).  As such, Plaintiff makes no evidentiary showing concerning Defendant's liability. See Richardson v. Runnels, 594 F.3d 666, 671-72 (9th Cir. 2010) (movant must make some evidentiary showing to support claim for summary judgment).

For these reasons, Defendant is entitled to summary judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 29).

(2) Defendant's Motion for Summary Judgment (Doc. 29) is **granted**.

(3) This action is dismissed with prejudice, and the Clerk of Court must enter judgment accordingly.

DATED this 22nd day of November, 2010.

_____
Mary H. Murgia
United States District Judge